LUELLA ATTEBERY, Appellee, *vs.* FRANK P. BLAIR, Appellant.—WILLIAM J. ATTEBERY *et al.* Appellees, *vs.* FRANK P. BLAIR, Appellant.

*Opinion filed February 16, 1910—Rehearing denied April 6, 1910.*

1. SPECIFIC PERFORMANCE—*purchaser cannot object to title because it may possibly prove defective.* While one who has bargained for a good title free from liens and encumbrances will not be required to accept a title if there is reasonable doubt about its validity or whether it is subject to liens or encumbrances, yet he will not be permitted to object to the title on account of the bare possibility that it will prove defective.

2. SAME—*when a party will not be compelled to take title depending upon Statute of Limitations.* Where a purchaser has contracted for a good title of record a court of equity will not compel him to accept a title depending upon adverse possession under the Statute of Limitations, even though it may be a good title.

3. ABSTRACTS OF TITLE—*what need not be shown by abstract of title.* While a purchaser may contract for a perfect paper title, and will, in such case, not be required to accept any other, yet if he contracts for a good title free and clear from encumbrances and that such title shall be shown by the abstract of title, it is not implied that the abstract of title shall show matters not of record nor all the facts and circumstances connected with the conveyances which might affect the title.

4. SAME—*what should be contained in an abstract of title.* An abstract of title should contain a summary of all grants, conveyances, wills, and all records of judicial proceedings whereby the title is in any way affected, and all encumbrances, and liens of record, showing whether they have been released or not, and should show all such facts of record as may impair the title.

5. SAME—*when obligation to furnish abstract showing a good title is fulfilled.* An obligation to furnish an abstract of title showing a good title free and clear from encumbrances is fulfilled if the abstract furnished, in connection with the rules of law applicable to the conveyances and with evidence of facts and circumstances explanatory of the records, shows such a title.

6. SAME—*fact that entries from government are not followed by patents is not a valid objection.* Where an abstract of title shows the original entries by purchasers from the United States government, the fact that the abstract does not show that the patents to which the purchasers were entitled were delivered to

them is not a serious objection, where the transactions are all more than fifty years old.

7. SAME—*a notation of a deed implies that the instrument was under seal.* A notation or memorandum in an abstract of title showing warranty and quit-claim deeds from named grantors to named grantees implies that the instruments were under seal unless the absence of a seal is noted; so, also, a notation of an acknowledgment before a notary or other public officer implies a complete acknowledgment.

8. SAME—*imperfections in abstract of title may be cured by affidavits.* Imperfections in an abstract of title, such as a failure to show who were the heirs of a party, whether a grantor was married or single, whether the name of a grantee was misspelled and what persons were intended where initials were given, may be cured by affidavits showing the facts.

9. DEEDS—*effect of a deed reserving coal rights under strip of land sold for right of way.* The reservation of coal rights in a deed conveying a strip of farm land for a railroad right of way operates as a separation of the title to the coal and the surface, and the grantor may not only remove the coal under such strip, but may use the mining ways thereunder as means of access to coal under other parts of the farm or other lands, and may contract to convey such right to others. (*Sholl* v. *German Coal Co.* 139 Ill. 21, distinguished.)

10. SAME—*deed not void because parcel excepted is not definitely described.* A deed conveying certain lands by a correct and definite description but which excepts two acres is not void because the attempted description of the two acres is so uncertain that the excepted parcel cannot be located therefrom, since, if the attempted description is void for uncertainty and describes nothing, there is nothing excepted from the land conveyed.

11. JUDGMENTS AND DECREES—*a decree in specific performance may provide for sale of defendant's interest.* A decree specifically enforcing a contract to purchase coal rights may properly provide for a sale of the defendant's interest in case he does not choose to pay the purchase money and receive the deeds within the time fixed by the decree.

12. SAME—*when decree is erroneous in ordering clerk to issue execution for deficiency.* A court, in a decree entered in advance of a sale, may establish the complainant's right to an execution for any deficiency, but the determination of the amount is a judicial act, which cannot be delegated to the clerk, and it is error to order the clerk to issue execution, as upon a judgment at law, for any deficiency after sale on the certificate of the master.

APPEAL from the Circuit Court of Montgomery county; the Hon. SAMUEL L. DWIGHT, Judge, presiding.

C. C. TERRY, and AMOS MILLER, for appellant.

LANE & COOPER, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This is a consolidated cause, consisting of two appeals by Frank P. Blair from decrees enforcing specific performance of contracts made by him with Luella E. Attebery and William J. Attebery and wife.

On January 2, 1907, Luella E. Attebery and William J. Attebery (the wife of the latter joining with him) gave to Frank P. Blair options for a term ending April 1 of that year to buy for $15 per acre all coal below the depth of one hundred and twenty-five feet under the surface of lands severally owned by them, and Blair was to have the right to mine and remove the coal and so much of other minerals as might be desirable or necessary to mine and remove in order to properly mine and remove said coal, and the right to conduct mining operations under said tracts of land, and to use all rooms and mining ways under said tracts for mining ways to and from beds of coal in other lands. The coal and mining rights were to be conveyed by good and sufficient warranty deeds, with title free and clear of all encumbrances, and upon acceptance of the options said parties were to cause to be prepared and deliver to Blair abstracts showing in them such title to said real estate. Blair paid Luella E. Attebery $150 for the option given by her and William J. Attebery $1000 for the option on his lands, which sums were to be applied on the purchase price if the purchases were made but to be forfeited in case of a failure to purchase. On March 30, 1907, Blair gave notice of his acceptance of the options, and abstracts were furnished

to him about April 15, 1907, which were retained three and one-half months and were returned on August 1, 1907, with numerous objections and the opinion of a firm of attorneys. Blair refused to take the premises of either party, on account of the alleged defects, unless the title was put in a condition to meet the requirements of his attorneys. Affidavits were furnished to meet such objections as that deeds and mortgages in the chain of title did not show whether parties were married or single or who the heirs of deceased owners were, and showing the identity of parties, possession, and matters of that sort, but Blair still refused to take the property. Thereupon Luella E. Attebery filed her bill in equity in the circuit court of Montgomery county to compel a specific performance of the contract with her created by the option and acceptance, and William J. Attebery and wife filed a like bill in said court to compel a specific performance of the contract with them. Blair answered the bills, alleging that the complainants did not have the kind of title which he contracted for, and also filed a cross-bill in each case for the cancellation of the contract therein set forth, which he had put on record, and the return to him of the sums paid to the complainants when the options were given. There were errors of description in the option given by William J. Attebery and wife, and in their bill they alleged that the mistakes were mutual and asked to have the option reformed, but otherwise the bills were of the same character. The court heard the evidence in the cases and entered a decree in each, finding as to the option given by William J. Attebery and wife that a mutual mistake occurred in the description of the premises, which mistake was reformed and corrected by the decree. The court by the decrees found that the titles of complainants were free and clear of all encumbrances and were shown to be such by the abstracts furnished to the defendant and the evidence offered in the case, and that the objections thereto made by defendant were not within

the conditions of the contract. The evidence showed, and the court found, that William J. Attebery had been in the possession of the premises described in the contract as reformed by the decree, for over seven years before the commencement of the suit, with color of title made in good faith, and had paid the taxes thereon; that the lands were farm lands and under fence, and that he had been in the adverse possession, claiming to own the same under paper title, for more than twenty years; that he was the owner in good faith by *mesne* conveyances from the original purchaser from the government down to the commencement of his suit; that Luella E. Attebery was the owner of the land which she contracted to sell, as an heir of her father and by conveyance from the other heirs; that her father acquired title and had possession of one tract from 1887 and of another from 1876 until his death, in 1895; that she and her father had been in the adverse possession under paper title, claiming to own the premises for more than twenty years prior to the commencement of the suit; that the grantor of one tract owned by her was in possession more than twenty years prior to the purchase by her father; that her lands were farm lands under fence, and that the abstract showed title in her free and clear of all encumbrance. The court decreed a specific performance of each contract and required Blair to pay to the complainants the amounts found due them, respectively, with interest at five per cent from the entry of the decrees. The complainants were required to deposit their deeds in the form fixed by the court with the master in chancery, and in default of payment within forty days of the amounts due, the master was ordered to sell the interest of Blair in the respective tracts, and if the same should not be redeemed, to execute and deliver a deed to the holder of the certificate for the premises not redeemed, and if the premises included in either contract should not sell for enough to pay the amount due thereon and costs, the master should file with the clerk

of the court a certificate showing the amount realized from the sale thereof, the amount of costs and the net amount of the sale, and the clerk was ordered to issue an execution, as upon a judgment at law, against Blair-for the sum remaining unsatisfied from the sale. The court dismissed the cross-bill in each case. With the exception of the reformation of the option given by William J. Attebery and wife, the questions involved in the two appeals are practically the same and for that reason they were consolidated.

The view entertained by counsel for Blair is, that inasmuch as the coal and mining rights were to be conveyed by good and sufficient warranty deeds, with title free and clear of all encumbrances, and that abstracts were to be furnished showing such title, Blair was not bound to accept conveyances and pay the purchase price unless the abstracts furnished showed a regular and connected chain of conveyances beginning with patents from the United States government and free from defects or omissions. They say he was offered, and the court required him to accept, titles based merely on statutes of limitation, which he was not bound to do. It is true that where a purchaser has contracted for a good title of record a court of equity will not compel him to take a title depending upon adverse possession under the Statute of Limitations, although it may be a good title, as that would be to enforce a different contract from that of the parties. (*Page* v. *Greeley,* 75 Ill. 400.) Where one has bargained for a good title free from liens and encumbrances, if there is reasonable doubt about the validity of the title or whether it is subject to liens or encumbrances the court will not decree a specific performance. But while a purchaser cannot be compelled to take a doubtful title, he will not be permitted to object to the title on account of a bare possibility that it will prove defective. (*Garden City Sand Co.* v. *Miller,* 157 Ill. 225.) A purchaser may, of course, contract for a patent title or a perfect paper title and may refuse to accept any other, but all

the facts upon which title depends are not of record and are not shown by abstracts, and one who gets a perfect paper title may, after all, acquire no real or beneficial title. In this case Blair was not bound to accept a title resting merely upon adverse possession under the Statute of Limitations, but the essence of the contracts was that he should have conveyances giving him a good title free and clear from encumbrances and that such a title should be shown by the abstracts. It was not implied that the abstracts should show matters not of record or all the facts and circumstances connected with the conveyances which might affect the title, such as possession, who were the legal heirs of a deceased owner where administration was not had within the jurisdiction, and matters of that kind. An abstract of title is, in a legal sense, a summary or epitome of the facts relied on as evidence of title, and it must contain a note of all conveyances, transfers or other facts relied on as evidences of the claimant's title, together with all such facts appearing of record as may impair the title. (*Heinsen v. Lamb,* 117 Ill. 549.) It should contain a full summary of all grants, conveyances, wills, and all records and judicial proceedings whereby the title is in any way affected, and all encumbrances and liens of record, and show whether they have been released or not. If the complainants furnished abstracts which, in connection with the rules of law applicable to the conveyances and with evidence of facts and circumstances explanatory of the records, showed good title in themselves free of all encumbrances, they fulfilled their obligations.

The option of William J. Attebery and wife was for the conveyance of the coal under 567½ acres and that of Luella E. Attebery included 120 acres. There were a number of abstracts, containing in all 222 transfers and covering a period of from seventy to ninety years. If it were necessary, in order to show a good title free from all encumbrances, that abstracts covering such numerous tracts,

24 1 — 2 4

with such a number of conveyances during such periods of time, must show a perfect paper title, without fault, omission or defect, although cured by existing facts or lapse of time, no one could sell or buy land at all. It is not practicable to treat of all the numerous objections to transfers of particular tracts separately. One objection common to all of them is, that the abstracts showed the original entries from the United States government appearing upon the book of such entries, certified by the State Auditor showing the purchase of the lands, but the entries were not followed by patents. Other objections as to particular deeds are, that the abstracts did not show that the deeds were under the seals of the grantors or the seals of the officers taking the acknowledgments; that grantors and mortgagors were not shown by the instruments or acknowledgments to be married or single; that it was not shown of record who were the heirs of deceased owners; that a mortgage made more than seventy years ago was not released of record; that another mortgage made to a firm was released in the name of the firm by one of the partners, and that a mortgage executed by an owner was released by himself, as administrator of the estate of the mortgagee. The entries showed the purchases from the United States beginning in 1819 and all of them more than fifty years ago, and the fact that the patents to which the purchasers were entitled had not been delivered to them would not cause any just apprehension as to the title in the mind of an ordinarily prudent person. The entries in the abstracts are as specific in form as the model given in Warvelle on Abstracts, 256, and show warranty and quit-claim deeds by named grantors to named grantees, and the memorandum implies that the instrument was under seal, which otherwise would not be a deed; so, also, a notation of an acknowledgment before a notary or other public officer implies a complete acknowledgment. A summary of a deed or acknowledgment is not designed to be a copy of the instrument, and

does not require a statement of anything further unless there is an absence of a seal, or some other defect is shown which would affect the validity of the instrument. In one case there was no administration of an owner's estate, so that who the heirs were did not appear of record, and in another the abstract showed the death of the owner, intestate, prior to December 23, 1843, but no inventory of real estate or list of heirs was found. Various deeds did not show, either in the body of the deed or in the acknowledgment, that the grantor was married or single; but affidavits are as satisfactory evidence of such facts as a statement by the grantor himself in the instrument or the certificate of the officer taking the acknowledgment, which is nothing more than the statement of a matter, which the officer is not required or authorized to certify to so as to make his certificate evidence of the fact. Either the certificate or the affidavit is accepted in real estate transactions as evidence of the fact. The administrator who released his own mortgage accounted for the amount due on it in the probate court and the estate was fully settled, which put an end to the mortgage. In some cases the initials of a party were given, but the identity of parties may be shown by other evidence and by the fact that no adverse claim was ever set up to the property. In one case the name of the grantee was spelled Felker when his name, in fact, was Felkel, but it was shown by affidavit that the name was so spelled through error; that no person by the name of Felker ever had or claimed any interest in the land. Most of the instruments about which question was made were executed from forty to sixty years ago and the mortgage not released was outlawed long ago. The affidavits furnished in connection with the matters of record showed good title in Luella E. Attebery and William J. Attebery to the lands which they, respectively, agreed to convey, and that the same were free of all encumbrances. The objections made to the title were of like character to those already noted, .

and none of them were sufficient to show that the title was defective.

A deed made in 1864 conveyed certain lands by a correct and definite description but excepted therefrom two acres which a witness said could not be located from the description of the same. If the attempted description of two acres was void for uncertainty and described nothing, there was nothing excepted from the land conveyed. The objection that the deed was void because the two acres could not be found was not good.

William J. Attebery and wife and Luella E. Attebery had each made a deed to John C. Davie of a strip of land one hundred and twenty feet wide across their lands, being sixty feet on each side of the location line of a railroad, and the conveyances were in fee and designed for the right of way of the railroad. The following reservation appeared in each deed: "Coal rights reserved." That this was a reservation of the title to the coal under the strips of land conveyed and that the grantors had a right to mine and remove the same is not denied, but it is insisted that they did not have all the rights which they agreed to convey to Blair. The options included the right to conduct mining operations under the tract of land to remove the coal, and the right to use all rooms, entries and mining ways under the tracts as and for mining ways to and from beds of coal in other lands. It is contended that after the coal shall be removed from under the right of way the defendant would not be permitted to use the rooms, entries and mining ways for mining ways to and from beds of coal in other lands. If the construction of the reservation contended for is correct, all that the grantors reserved was a right to remove the coal from under the strips of land, and could not afterward cross the same to remove coal from their own adjoining lands. No such unreasonable conclusion is insisted upon, and it is conceded that they would have the right to use the rooms, entries and mining ways

for mining ways to and from beds of coal on the remainder of their own lands. But there is no ground for a distinction between such use and the use of the mining ways for access to other lands. The purpose of the reservation was to separate the title to the coal under the surface from the title to the surface, together with the mining rights connected with it. No conveyance of the coal or such rights was made, and the coal, with all the rights pertaining to it, remained in the grantors. The deeds, with the reservations, operated as a separation of the rights of property as between the land and the coal and the mining rights, (*In re Major,* 134 Ill. 19; *Sholl Bros.* v. *People,* 194 id. 24;) and we see no reason why the grantors could not use the space where the coal was found in any way which they saw fit, as though no conveyance had ever been made. In the case of *Sholl* v. *German Coal Co.* 139 Ill. 21, the owner of land granted the right to mine coal under a one-acre tract, which was nothing more than the right to enter the land and remove the coal, while in this case the owner reserved all coal rights or all rights connected with the mining of coal.

It is insisted that the decrees were erroneous for the reason that they provided for a sale of defendant's interest in case he did not choose to pay the purchase money within forty days and receive the deeds. A decree of that kind was entered in the case of *Corbus* v. *Teed,* 69 Ill. 205, and it was not improper to enforce the obligation of the defendant by selling his interest in the land if he did not comply with the requirements to pay the money and take the deeds.

The decrees were erroneous in ordering the clerk to issue execution, as upon a judgment at law, against the defendant for any deficiency after sale on the certificate of the master in chancery. While a court, in a decree entered in advance of a sale, may establish the complainant's right to an execution for any deficiency, the determination of the

amount is a judicial act, which cannot be delegated to the master or clerk. *Cotes* v. *Bennett*, 183 Ill. 82; *Eggleston* v. *Morrison*, 185 id. 577.

The decrees are affirmed except as to the orders for executions, and the order for execution in each case is reversed. The costs of the appeals will be divided equally between the appellant and the appellee or appellees.

*Affirmed in part and reversed in part.*