Jonas G. Bragg, Appellee, v. Hethcoat Chilcote et al., Appellants.

1. VENDOR AND PURCHASER—*receipt of abstract.* Where a contract for the sale of land requires that the vendor shall furnish by a certain date an abstract of title showing a good title in the vendor, the vendee receiving an abstract after the date provided waives his right to rescind because the abstract was not furnished at the time agreed, but does not waive his right to rescind because the abstract does not show a good title.

2. VENDOR AND PURCHASER—*when contract may be rescinded if abstract does not show good title.* Where a contract for the sale of land gives the vendee a reasonable opportunity to have examined the abstract of title that is to be furnished by the vendor and is

to show a good title, but contains no provision for an opportunity thereafter for the vendor to amend the abstract or cure defects in the title, if the title is not shown to be a good title by the abstract when it is furnished, the vendee has a right to rescind the contract, and it is immaterial that his attorney made suggestions as to how several of the defects could be cured, and sent a copy of his opinion to the abstracter.

3. VENDOR AND PURCHASER—*abstract must show whether grantor is married or single.* Where a contract for the sale of land requires that the vendor shall furnish an abstract of title showing a good title, the failure of certain conveyances in the abstract to show whether the grantors were married or single is a defect relating to the substance of the title and gives the vendee a right to rescind the contract.

4. VENDOR AND PURCHASER—*rights of vendee when abstract is defective.* Where a contract for the sale of land requires that the vendor shall furnish an abstract of title showing a good title and does not give the vendor any right to cure defects after the abstract is furnished, if the abstract does not show a good title, the vendee may either treat the contract as inoperative and demand the return of payments made, or he may pay the balance of the purchase money and demand a deed of the premises.

Appeal from the Circuit Court of Edgar county; the HON. E. R. E. KIMBROUGH, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

**Statement by the Court.** This is a suit in *assumpsit* begun by Jonas G. Bragg against Hethcoat Chilcote, Rebecca J. Chilcote and Roy J. Chilcote to recover $3,000 paid by plaintiff and interest thereon on the following contract:

"This agreement made and entered into this 13th day of August, in the year 1910, by and between Hethcoat Chilcote and Roy J. Chilcote of Paris and Rebecca J. Chilcote, wife of Hethcoat Chilcote, of the County of Edgar and State of Illinois, parties of the first part, and Jonas G. Bragg, of the County of Douglas and State of Illinois, party of the second part.

"That the said party of the first part hereby sells to the said party of the second part, the following described real estate to-wit: 290 acres more or less, known as the Alec Helm farm and some small tracts adjoining, being all the land owned by Hethcoat and

Roy Chilcote in sections 20, 21, 28 and 29, town 15 north, range 10 east, of the 3rd P. M., situated in the County of Douglas, in the State of Illinois, for the sum of one hundred and fifty-five dollars per acre.

"The said party of the first part hereby covenants and agrees to convey the said premises above described to the said party of the second part, by a good and sufficient warranty deed or deeds executed by the party of the first part, together with the wife of the said party of the first part in due form of law, which deed shall be delivered to the said party of the second part upon payment being made as herein provided, on or before the first day of March, 1911.

"The said party of the first part also agrees on or before the 15th day of October, 1910, to furnish to the said party of the second part a complete abstract of title to said premises brought down to date, certified to by a competent abstracter, showing good title to the said premises free and clear of any and all encumbrances, parties of the first part to agree to execute deed and place in bank of Bragg, Helm & Co. within ten days, together with contract and allow the said party of the second part a reasonable opportunity to have said abstract examined.

"The taxes of said premises for the year 1910 are to be paid by the said party of the first part. Possession of said premises is to be delivered to the said party of the second part on or before the first day of March, 1911.

"On his part the said party of the second part agrees to pay the said sum of forty-four thousand nine hundred and fifty dollars (provided there are 290 acres of land) in the manner following. Check for one hundred dollars, cash in hand, upon the execution of this agreement, the receipt whereof is hereby acknowledged; bankable note for $2,900 due in thirty days from date of this contract, said note to be executed and delivered to parties of the first part when deed is executed and placed in the bank of Bragg, Helm & Co.

Tuscola, Illinois, which is to be on or before ten days from date of this contract. As part of the purchase price party of the second part agrees to execute note for $20,000 secured by first mortgage on above land, due on or before five years from March 1, 1911, with six per cent. annual interest, and the remainder in cash upon the first day of March, 1911, and on receipt of the deed as herein provided.

"It is mutually agreed by and between the parties hereunto that the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties; that time is of the essence of this contract, and that either party hereto who shall fail or refuse to comply with the provisions of this contract, on his part to be performed, shall forfeit and pay to the other party the sum of———— dollars, which sum is hereby fixed and agreed upon as the liquidated damages to be sustained by either party from failure or default upon the part of the other.

"The parties to these presents have hereunto set their hands and seals to this agreement, in duplicate, the day and year first above written.

"Hethcoat Chilcote     (Seal)  
Rebecca J. Chilcote     (Seal)  
Roy J. Chilcote     (Seal)  
Jonas G. Bragg     (Seal)"

The declaration contains only the common counts and the plea is the general issue. The case was tried by the court without a jury and a judgment rendered in favor of the plaintiff for $3,000 from which the defendants appeal.

H. S. TANNER and CHARLES G. ECKHART, for appellants.

FRANK T. O'HAIR, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

The evidence shows that negotiations for the sale of the land were conducted by Hancock & England, real estate agents at Tuscola, Douglas County, Illinois. The appellee resided at Tuscola, and the appellants at Paris, Edgar County, Illinois. The parties were not personally acquainted and did not meet until after the contract was executed. The contract was executed at Tuscola by appellee and was carried to Paris by England to be executed by appellants. The appellee at the time of executing the contract paid one hundred dollars and executed and delivered a note for $2,900 payable to the order of Hethcoat Chilcote in thirty days. This note was transferred by Chilcote before it was due and paid by appellee at maturity. The contract provides "that time is of the essence of this contract."

By the terms of the contract appellants were to furnish on or before October 15, 1910, "a complete abstract of the title to the premises, brought down to date, certified to by a competent abstracter, showing a good title to the premises, free and clear of any and all incumbrances." Appellant did not furnish the abstract by October 15th but did furnish an abstract on November 13th and appellee received the abstract at that time. By receiving it he waived the default of the appellants in anything wherein they had made default prior to that time, but did not waive the provision that the abstract when furnished must show a good title to the premises in appellant. Appellee immediately gave the abstract to Mr. Chadwick, his attorney, for an opinion upon it. The abstract contained 154 pages and it took several days for the attorney to fully examine and make a report on it. On November 22d, the attorney made a written report, which was received by appellee on the 23rd, showing that there were many defects in the title, such as that in several of the deeds it was not shown whether the grantors were

married or single, defective acknowledgments, out-
standing tax titles and unreleased mortgages. As to
a mortgage for $10,000 due December 29, 1910, there
is proof tending to show that in August appellee
agreed that he would advance the money to pay it out
of the cash payment he was to make March 1, 1911,
and accept interest on such advance payment. On
November 25th appellee met Hethcoat Chilcote in the
office of the real estate agents and stated that appel-
lants had not lived up to the contract, that the title
was not good and demanded his money back. Appellee
at the request of Chilcote went with him to the office
of the abstracters. Appellee there stated that he did
not believe the title could be perfected and Chilcote
thought it could. After appellee left the abstract of-
fice, Chilcote directed the abstracter to do what was
necessary to correct the title and to amend the ab-
stract.

The attorney who examined the abstract, in his writ-
ten opinion, made suggestions as to how several of the
defects could be cured and sent a copy of his opinion
to his client and one with the abstract to the abstracter.
This the appellants argue was a request from the ap-
pellee for corrections in the title and amendments to
the abstract. Appellee made no request to have the
title corrected and did not authorize any one to make
any such request for him, but immediately notified ap-
pellants that the title was not good and demanded his
money back. This he did orally on November 25th,
and on December 15th, by letter to appellants.

After the opinion of the attorney was rendered that
the title was not good and after appellee had told ap-
pellants that the title was not good and demanded his
money back, the abstracter between that time and
February 25, 1911, added twenty-four pages to the ab-
stract after the original certificate to it made Novem-
ber 10th, inserted several pages in the body of the ab-
stract, made corrections on the original sheets, added
four pages of affidavits, removed the original caption

at the head of the abstract and inserted a new one changing somewhat the description of the property. Hancock, one of the real estate agents who negotiated the sale, testified that he tendered the abstract as amended to appellee on February 25, 1911, and that appellee said he would not receive it; that his attorney had told him the title was not good. Appellee testified it was not so tendered him and that he never saw it as amended until March 1st, when the abstract and deeds executed February 24, 1911, were tendered to appellee by one of the attorneys for appellants and appellee again said he had decided not to take the land; that his attorneys had advised him in the fall that the title was not good.

The appellants did execute deeds and leave them at the bank within ten days from the execution of the contract, but it appears that there was an error in the description of the land in one of the deeds. After the opinion of the attorney on the abstract was rendered, appellants withdrew the deeds from the bank and on February 24, 1911, executed new deeds, which were the deeds tendered on March 1st.

The contract gave appellee "a reasonable opportunity to have said abstract examined" that was to be furnished on or before October 15th, but contains no provision for an opportunity thereafter for appellants to amend the abstract or cure defects in the title. If the title was not shown to be a good title by the abstract when it was furnished, then appellee had the right at that time to rescind the contract because of the failure of appellants to furnish an abstract showing a good title. The waiver of the right to rescind because the abstract was not furnished at the time agreed was not a waiver of the right to rescind because it did not show a good title. 29 Am. & Eng. Ency. of Law 675. "A fee simple title is a merchantable title, that is, a title not subject to such reasonable doubt as would create a just apprehension. It is such a title as would be regarded as merchantable, so that per-

sons of reasonable prudence and intelligence would be willing to take it and pay the fair value of the land.'' Hale v. Cravener, 128 Ill. 414; Harding v. Olson, 177 Ill. 303; Attebery v. Blair, 244 Ill. 363.

The abstract as presented November 13th, did not show a good title in appellants and did show some serious defects in the title. The failure of certain of the conveyances in the abstract to show whether the grantors were married or single was a defect relating to the substance of the title, since if the grantors were married the wives, if they survived their husbands, would be entitled to dower after the death of the grantors. The right to have dower assigned does not accrue until after the death of the husband. It was a substantive defect that could not well be remedied by a suit at law for damages under the contract. The covenant for a good title to be shown by the abstract, when it should be furnished was not dependent on any of the other covenants, but they were dependent on it. The abstract failing to show a good title when it was presented was a default in a substantial part comprehending the foundation of the contract. The appellee was, under the contract, entitled to know whether he was getting what he contracted for at the time fixed in the contract, or if he waived that time, then whenever he did accept the abstract, so that he might have the time provided for, except in so far as he waived it, after the title was shown to be merchantable to make preparation for the payment of the large amount of the purchase price. The contract did not provide that appellants might have any time after the abstract was furnished to cure defects; therefore the purchaser had the right after a reasonable time for its examination, the abstract not showing a good title free and clear of any and all encumbrances—except the $10,000 mortgage due December 29, 1910, which defect the appellee had waived so far as the abstract was concerned— either to treat the contract as inoperative and demand the return of his payments made, or to pay the balance

of the purchase money and demand a deed of the premises in the exercise of his legal option to take the defective title disclosed by the abstract. Lancaster v. Roberts, 144 Ill. 225; Bishop on Contracts, sec. 828. Appellee did exercise his option to rescind the contract because the abstract did not show a good title, and did rescind it in November, immediately upon receiving the opinion of his attorney. He was not in default at any time and appellants did make default in the performance of a substantial part of their contract. Appellee was entitled to recover the money paid on the contract; the judgment is therefore affirmed.

*Judgment affirmed.*