## CONTRACT FOR SALE OF PROPERTY ALLEGED TO BE HELD UNDER A DEFECTIVE TITLE.

Superior Court of Cincinnati.

### MARY E. SCOTT v. MABEL E. WALKER.

Decided, December 3. 1913.

*Specific Performance—Will Not be Enforced Where Title Has Been Acquired by Adverse Possession—Presumption as to Cancellation of Mortgages Covering Property Sold in Judicial Proceedings—Title Taken by a Trustee Not Necessarily Reduced to a Life Estate by Failure to Include Words of Perpetuity in the Granting and Habendum Clauses.*

1. Where the records of a foreclosure suit have been destroyed by fire, riot, or civil commotion, and only the deed of the master commissioner remains, the court will assume that the mortgages involved were ordered canceled or released of record.
2. Where the deed of such master commissioner purports to convey all the right, title and interest not only of the mortgagor, but also of all parties to the suit including the mortgagees, no claim or interest remains outstanding in such mortgagees even though their mortgages have not been canceled or released of record
3. Where a master commissioner conveys property to the trustee of a building association, "his successors and assigns forever," equity will decree that the trustee shall take an estate in fee simple if it is necessary for him to take such quantum of estate in order to fully perform the duties of his trust.
4. Where the interest of the person whose property is sold at foreclosure sale, is an estate in fee simple, a conveyance by a master commissioner of all the title and interest of such owner and mortgagor would pass an estate in fee simple, even though words of inheritance were not used in the deed.
5. A court of equity will not decree specific performance of a contract for the purchase of real estate where the only title that the vendor can convey has been acquired through his adverse possession under a statute of limitations.

*Hicks & Hicks,* for plaintiff.
*Eltzroth & Maple,* contra.

SUTPHIN, J.

This is a suit for specific performance of a contract for the purchase of real property. On June 27, 1913, plaintiff and defendant entered into a written contract by the terms of which plaintiff agreed to sell to the defendant certain real property located in Madisonville, city of Cincinnati, and the defendant agreed to pay therefor the sum of $5,025 upon the delivery of a deed when the title was found to be good. At the time the agreement was entered into the defendant paid to the plaintiff the sum of one hundred dollars, with the understanding that if the title was found to be good it was to be credited on the purchase price, but if the title was not found to be good it was to be refunded. Defendant claimed that the title to the property was defective and unmarketable and not good, and notified the plaintiff to that effect a little over a month after the contract had been entered into, and on September 12th plaintiff filed her petition for a specific performance of the contract. The answer of defendant, after admitting the contract, set up various particulars in which the title was not good, and by a cross-petition sought to recover the original deposit of one hundred dollars. In reply to the answer and in answer to the cross-petition, the plaintiff pleaded the details of title to her property in support of her contention that she was prepared to give a good and merchantable title to her property.

The cause came on for hearing upon a motion of plaintiff for judgment on the pleadings and upon a demurrer of defendant to plaintiff's reply. As counsel agree that the pleadings contain all the material facts, a ruling of the court upon this motion and demurrer would be a final disposition of the case.

A brief statement of facts is necessary for a clear understanding of the questions involved: Prior to December, 1875, the property in question was owned by Philip W. Hill, and during the period from that time until April, 1878, he placed five mortgages thereon in the following order: to the Wildey Building Association No. 2 on December 15, 1875; to George H. Burgtorf, May 4, 1876; to the Wildey Building Association No.

2, July 1, 1876; to John C. Ward, August 13, 1876; and to William D. Henderson, April 26, 1878. All of these mortgages were duly recorded. It further appears that on July 14, 1877, George H. Burgtorf filed suit for a sale of this property, making the mortgagor, the building association, and Ward parties defendant therein. The building association, by an answer and cross-petition, joined in the prayer, and in July, 1878, the court ordered the master commissioner to sell the property, unless the various amounts due were paid to the mortgagees within thirty days. An appraisement and sale were duly had, and in the January term of court, 1879, the sale was duly confirmed by court, and the master commissioner was directed to convey by deed in *fee simple* lots Nos. 3 and 8 to William J. Littell, trustee of the Wildey Building Association No. 2. At the same time and in the same manner the master commissioner was directed to convey lots Nos. 2 and 7, by deed in *fee simple* to Mary Scott, the mother of the plaintiff herein. The building association deed was executed February 6, 1879, and the deed to Mary Scott on March 26, 1879, and these deeds were duly recorded.

In accordance with these proceedings and by the terms of the granting and habendum clause of the deed to Mary Scott, the property, together with all the right, title and interest of Philip W. Hill and of all other parties in the suit, was sold and conveyed to the said Mary Scott, "her heirs and assigns forever."

In accordance with these proceedings and by the terms of the granting and habendum clause of the deed to William J. Littell, trustee of the Wildey Building Association No. 2, the property, together with all the right, title and interest of Philip W. Hill and of all other parties in the suit, was sold and conveyed to the said William J. Littell, trustee of the Wildey Building Association No. 2, "his successors and assigns forever."

On March 26, 1879, William J. Littell, trustee, conveyed lots Nos. 3 and 8 to Mary Scott, the mother of the plaintiff herein. The plaintiff in the case at bar acquired title to all of this property under and by virtue of the will of her mother, Mary Scott, and the possession of herself and her mother has been actual,

continuous, open, and notorious for more than twenty-one years prior to the date of the contract in question.

The further fact appears that none of the mortgages above mentioned have been canceled or released of record, and while not appearing in the pleadings the fact has been admitted by counsel that all papers and records of the foreclosure suit above mentioned were subsequently destroyed in 1884 during the court house fire, and the facts in reference thereto were obtained from recitals in the master commissioner's deeds which are in existence and were exhibited at the hearing.

At the outset we can remove one of these five mortgages from consideration, to-wit, the mortgage from Hill to Henderson, executed April 26, 1878. The foreclosure proceedings instituted by Burgtorf were commenced some nine months prior thereto, to-wit, July 14, 1877, and any right acquired by Henderson under his mortgage was acquired pending an action for the sale of same, and therefore under the doctrine of *lis pendens* it is subject to the determination of the action which was then pending and which afterwards resulted in a sale to a purchaser who took it free of the lien of such mortgage. See *Ludlow* v. *Executors*, 3 Ohio, 542; *Bennett* v. *Williams,* 5 Ohio, 462; *Roberts* v. *Doren,* 20 W. L. B., 397.

In plaintiff's reply it is alleged that a good and merchantable title was acquired by reason of the fact that both plaintiff and her mother had been in actual, continuous, open, notorious, and adverse possession of the property for more than twenty-one years prior to the date of contract of sale, to-wit, June, 1913. While the question does not seem to have ever been passed upon in this state, yet we believe that sound principles of law require a court of equity to refuse the enforcement of a contract for the purchase and sale of real property where the title depends upon adverse possession under a statute of limitations. The reason for this is that to sustain such claim of title by adverse pos-session, parole evidence would have to be introduced, which might be disputed, thereby giving rise to a question of fact, and no purchaser should be compelled to take property the possession of

which he might be obliged to defend by litigation depending upon a question of fact. *Atterbery* v. *Blair,* 244 Ill., 363; *Heller* v. *Cohen,* 154 N. Y., 299.

This brings us to the principal grounds of objection raised by the defendant, the first of which is that the four uncanceled mortgages constitute a cloud upon plaintiff's title. In connection with this objection it is urged that under the statutory law, as it existed at the time these mortgages were made and foreclosure suit instituted, it was incumbent upon the court, when the order of sale was issued or the order confirming the sale was entered, to make an additional order requiring the clerk to make an entry of release or satisfaction on the record of such mortgages, and cited in support thereof Section 2 of the act of April 16, 1872 (Vol. 69 Ohio Laws, 74), which provision is now found in substantially the same terms in Section 8552 of the General Code, which reads as follows:

"The court in which proceedings are commenced, relative to a mortgage * * * the final * * * order or decree in which is to * * * require the judicial sale of property included in the mortgage * * * in case of failure to pay the amount secured thereby * * * at the rendition of such final order or decree, shall make the necessary order for the proper entry of a memorandum, release or satisfaction, by the clerk, on the record of such mortgage." * * *

In view of the fact that these mortgages remain uncanceled, that the recitals in the master commissioner's deeds do not show the issuance of any order such as is required by the statute above quoted, and that the destruction of all the papers and records in the foreclosure case has removed any means of ascertaining whether or not such order had been made, it is now claimed that the court did not make such an order or the clerk failed to perform his duty as required by law. This argument seems to proceed upon the theory that the cancellation of those four mortgages is of primary importance, whereas we believe that the more important question is whether or not the purchaser at the foreclosure sale took the property relieved from the lien of

these mortgages. It is unfortunate, of course, that the records of this foreclosure suit have been destroyed. The Legislature, however, has recognized the difficulties arising from such a situation and has enacted statutes of a curative nature where records have been lost or destroyed; in fact, there has been an express enactment to cover just such a situation as exists in the case at bar, where the records of a sale of real property by master commissioner have been destroyed by "fire, riot, or civil commotion." Such deed of a master commissioner shall be taken as *prima facie* evidence not only of the legality and regularity of the sale, but of the correctness of the proceedings in the action growing out of which the property was sold. See Section 12349, General Code, which reads as follows:

"When real estate has been sold by a  *  *  *  master commissioner,  *  *  *  authorized by the court, and the record of the action in which such sale was made  *  *  *  is lost or destroyed by fire, riot or civil commotion, the deed of such property made by such  *  *  *  master commissioner  *  * * authorized by the court, shall be *prima facie* evidence of the legality and regularity of such sale, and of the correctness of the proceedings in the action or proceeding wherein the property was sold."

Under this statute the court would be justified in assuming that the proceedings in that action were correct, even perhaps to the extent of assuming that the clerk had been ordered to make an entry of cancellation upon the original records of the mortgages, which would correct the defect complained of. Aside from that however, the master commissioner in the deeds in question conveyed not only all the right, title and interest of the original mortgagor but also all the right, title and interest of all other parties in that suit, to-wit, the mortgagees Burgtorf, Ward and the building association. If all of the interest of these mortgagees has been disposed of we are unable to see what further claim or interest they can have in this property, irrespective of the question as to whether their mortgages have been canceled or not. This conclusion finds support in the funda-

mental proposition of law that when property is sold in a judicial proceeding the sale is free of the rights of all the parties to the action, and their claims continue only as against the proceeds of sale. See *Lessee* v. *Risk,* 15 Ohio, 84; *Freeby* v. *Tupper,* 15 Ohio, 468.

The first syllabus of the Risk case states the rule very concisely in the following language:

"When a creditor, whose debt is secured by mortgage, recovers judgment for the same debt, takes out execution, and causes the mortgaged premises to be sold, the purchaser takes an indefeasible title, although the money made is not sufficient to satisfy the entire debt."

The next, and perhaps the most important contention of defendant, is that the deed from the master commissioner to William J. Littell, trustee of the Wildey Building Association No. 2, his successors and assigns forever, of lots Nos. 3 and 8, passed merely a life estate for the reason that a deed, in order to convey a fee simple title, should be to the grantee and to his heirs and assigns forever.

There can be no dispute that in Ohio, as at common law, the word "heirs" or other appropriate words of perpetuity in a mortgage or other deed of conveyance of lands, is essential to pass a fee simple estate, and that the omission of such word in the granting and habendum clause of deeds to natural persons vests in the grantee a life estate only. See *Ford* v. *Johnson,* 41 O. S., 366; *Brown* v. *Bank,* 44 O. S., 269.

However, there are certain well established exceptions to this rule, which must be considered. For instance, it has been held that a grant in real property to a corporation, not only without the word "heirs" but also without the word "successors," would pass a fee simple on the theory that a grant to a corporation aggregate might last forever, that words of perpetuity are only necessary where the grant is to a corporation sole. See *Railway* v. *Bosworth,* 46 O. S., 81.

Another pronounced exception to the general rule in this state is in the case of a mortgage, where it has been held that if the

language in the recitals and conditions of a mortgage. plainly evidence an intention to pass the entire estate of the mortgagor as security for the mortgage debt, and the express provisions of the instrument can not otherwise be carried into effect, it will be construed to pass such an estate, although the word ''heirs'' or formal word of perpetuity is not employed. *Brown* v. *Bank*, 44 O. S., 269, at 276.

An equally well established exception to this general rule is that in an active trust the trustee will take that quantum of legal estate which is necessary to the discharge of the declared powers and duties of the trust, or, as has been very tersely expressed:

''Thus, the trustee will take by implication of law a fee in the estate when the duties of the trust require it, although the conveyance is in terms of a life estate, or fails to use the word 'heirs.' ''   28 Am. & Eng. Encyc. of Law, 2d Ed., 923.

This doctrine was announced as early as 1720 by Lord Chancellor Hardwicke. *Villiers* v. *Villiers*, 2 Atkyns, 72; *1 Lewin on Trusts*, 214.   See also *North* v. *Philbrook*, 34 Maine, 532.

This doctrine has been approved by the Supreme Court of the United States in the case of *Young* v. *Bradley*, 101 U. S., 782, at 785, where Justice Miller, speaking, says:

''The doctrine is well settled that, whatever the language by which the trust estate is vested in the trustee, its nature and duration are governed by the requirements of the trust.   If that requires a fee simple estate in the trustee, it will be created, though the language be not apt for that purpose.''

The federal court for the district of Ohio has adopted the same view in the case of *Young* v. *Mahoning County*, 53 Fed. Rep., 895, at 899, where, after announcing the general rule, Judge Taft said:

''But there is an exception to this rule when, upon the face of the deed, it appears that the conveyance is made in trust for a use, the full performance of which requires the vesting of a fee in the trustee and grantee.   In such a case the deed con-

veys a fee commensurate with the necessities of the trust imposed by the terms of the deed, and this, if so conveyed, is a legal estate, and is not cognizable alone in equity.''

This doctrine received early recognition by the general term of this court in the case of *Williams* v. *Mears*, 2 Disney, 604, at 616. In this case the deed expressly clothed the trustee with fee simple by the use of words of inheritance in the granting clause, yet the court said:

''Moreover, the duty imposed upon him to convey to the *cestui que trust* in remainder, and the power of sale, require that estate, and upon the familiar rule that a trustee takes as large an estate as may be necessary for the execution of his trust, would give him a fee *even if words of inheritance were omitted.*''

Along the same general lines, see *Vaughan* v. *Zitscher*, 4 N.P. (N.S.), 90; *Stephenson* v. *Sedam*, 12 C. C., 418.

Applying this principle to the case at bar, we are obliged to examine this master commissioner's deed from its four corners to determine what character of estate it was intended to pass, and, in view of the fact that the grantee was described as trustee for the building association, to determine just what *quantum* of legal estate was necessary to discharge the duties of the trust. Here is a foreclosure proceeding, and on the answer and cross-petition of a building association, one of the mortgagees, the property is ordered sold. It is duly appraised and at the sale is bid in, not by the building association proper, but by Littell as trustee for it. It would certainly seem to be a very natural order of events for a mortgagee to buy in property at a foreclosure sale to protect its original loan upon which there had been a default. Especially is this to be expected from a building association, which is incorporated for the express purpose of loaning money on real estate as security. Now, the fact that it was bought in by an individual as trustee for the building association gives rise to a very clear implication as to the powers and duties of that trustee, for he was acting as trustee for an original mortgagee, and the duties of his trust were clearly

either to subsequently turn the property over to the building association, or sell it and turn over the proceeds, a well known method resorted to in the dissolution and winding up of the affairs of building associations. Suppose Littell died before he had performed either of those duties; in such case the trust would entirely fail if only a life estate was created, and we would have the anomalous situation of the original owner becoming a remainderman after all his interest in the property had been disposed of. It is a familiar doctrine in equity that a trust shall never fail for want of a trustee, and from what has been said above it seems equally well established that a trustee will take that *quantum* of legal estate necessary to perform fully the duties of his trust, irrespective of the language by which the estate is vested in the trustee.

But we are not obliged to rest our conclusion in this branch of the case solely upon the above mentioned doctrine. We have here a master commissioner who conveys property upon order of court and who prepares a deed to the purchaser in which is set forth the names of the parties to the judgment, the substance of the order of sale and the return thereon, and the order of confirmation, all duly executed, acknowledged and recorded. The deed on its face expressly conveys all the right, title and interest of the original owner and mortgagor and of the various mortgagees, parties to the proceedings. It is admitted that the mortgagor, Philip W. Hill, was the owner of the fee simple title to this real property. What the master commissioner was ordered to convey to the purchaser and what he did convey by express words, was all that title and interest of the mortgagor, which was a fee simple title. This conclusion is inevitable, not only by reason of the express words of the deed, but by reason of the express terms of the statute thereunto pertaining, which is Section 11694, General Code, which reads as follows:

"Such deed shall be *prima facie* evidence of the legality and regularity of the sale. All the estate and interest of the person whose property the officer so professed to sell and convey, whether it existed at the time the property became liable to satisfy the

judgment, or was acquired afterwards, shall thereby be vested in the purchaser.''

The preceding statute, Section 11693, prescribes just what shall be contained in a master commissioner's deed, which are all those provisions the deed in question actually does contain. The master commissioner had only such power as the court and the statutes of Ohio gave him. That being so, he would not have had power to grant a life estate, or in fact any estate less than that owned by the party whose property was being sold. We are therefore of the opinion that a fee simple title passed to the grantee in this master commissioner's deed, and his conveyance two months later to the mother of the plaintiff herein, of all his right, title and interest in and to said property, was a conveyance to her of an estate in fee simple. The contract in question is in all respects fair and free from ambiguity, and having reached the conclusion that its enforcement as against the purchaser, will vest in her a good and marketable title, it is the duty of the court to decree a specific performance of the contract in question. See *City of Tiffin* v. *Shawhan*, 43 O. S., 178.

The demurrer of defendant to plaintiff's reply will therefore be overruled, and the motion of plaintiff for judgment on the pleadings will be granted.