PETER PAPIN *et al.*

*v.*

ALBERT E. GOODRICH *et al.*

*Filed at Ottawa May 12, 1882.*

1. CONTRACT—SALE OF LAND—*as to precedent or contemporaneous acts of the vendor and purchaser, respectively.* Where a written offer to purchase real estate is accepted, the purchaser proposing to pay $35,000 in cash on or before a certain day named, and to assume the payment of a mortgage on the property, possession to be given on the cash payment, and a mortgage to be given on the premises for the deferred payments, the payment of the $35,000 must precede the right of the purchaser to receive a deed, and the execution of such deed must precede or be contemporaneous with the execution of the mortgage to secure the deferred payments.

2. SAME—*excuse for non-performance by purchaser—use of insulting language by vendor—inability of vendor to perform.* The use of insulting, disagreeable and irritating language by a vendor of real estate, when approached on the subject of the contract by the purchaser, affords no excuse for any relaxation on the part of the latter or his assignee in preparing and offering to carry out the contract. If the vendor, before the day of payment, has put it out of his power to perform his part of the contract, payment, or an offer to pay unqualifiedly, would, doubtless, be excused.

3. SAME—*failure on part of vendor to fix the time for doing an act connected with sale—as excusing tender of payment by purchaser on the day fixed therefor.* In a contract for the sale of a hotel and all the furniture belonging thereto, at a definite and fixed price, an inventory of the furniture to be furnished by the vendor, in which contract a payment is provided to be made on or before a day named, a refusal on the part of the vendor to set a time for taking the inventory affords no excuse for not making the payment at the proper time, or an unqualified tender of the same, as the taking of the inventory could have nothing to do with fixing and making more definite the duties of either party, such as determining the price, or

Syllabus.

amount of payments. In such case the making of the inventory is merely a separation and identification of the property, and a part of the surrendering of .possession.

4. SAME—*right of purchaser to inspect deed before paying purchase money.* In the absence of any clause in a contract of purchase of property to that effect, the purchaser will have no right to a personal inspection of the vendor's deed before making the payment upon which he is to receive a conveyance.

5. SAME—*proof of custom on that subject.* There is no error in refusing proof of a custom in a particular place to afford a purchaser of land an opportunity to inspect his vendor's deed before making payment, when no offer is made to show that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it.

6. SAME—*refusal of vendor to permit purchaser to inspect deed before payment—effect on the rights of the parties.* Where, by a contract, the purchaser of real estate is required on a certain day to make a payment, and the vendor to convey, the purchaser; on the day before the day fixed, offered to make the payment upon inspection of the vendor's deed, if it should prove satisfactory, and the vendor refused to allow an inspection, though stating he had the same prepared ready for delivery on payment, the court say they do not hold the vendor made a sufficient tender of a deed, or manifested such a willingness to comply with his contract as to have authorized him then, on the refusal of the purchaser to perform, to have filed a bill to cancel the contract.

7. Under a contract for the sale and conveyance of real estate, the purchaser was to make a payment on or before a day named, when the vendor was to deliver the conveyance. On the day preceding this day, the assignee of the purchaser, having the money necessary, offered to pay it, if, upon inspection of the deed, it should prove satisfactory, which inspection the vendor refused, but offered to deliver the same on deposit of the money with his banker, which the assignee refused to do: *Held,* that neither party was relieved from his obligation under the contract by what then transpired.

8. SAME—*as to furnishing abstract of title—specific reason for refusal of purchaser to perform.* Where a contract of purchase provides that the vendor is to furnish an abstract of title, and notice is given where such abstract may be found and inspected, the failure of the vendor to furnish the same, when no objection is urged at the time, will not authorize the purchaser to rescind. and his refusal to perform is placed on another ground which is untenable.

9. PRACTICE—*time to object.* Where no objection is taken in the court below to amending a bill for the specific performance of a contract for the sale of real estate, so as to seek a cancellation of the contract, it can not be urged as a ground of error in a court of review.

10. AMENDMENT—*of bill changing prayer for relief of a different kind.*
There is no error in allowing an amendment of a bill by a vendor of property
for the specific performance of the contract by changing the prayer for a
cancellation of the contract. The defendant has no vested right in the
phraseology of the bill.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of
Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Mr. JAMES FELCH, and Mr. GEO. L. THATCHER, for the
appellants:

A party, to have a specific performance of a contract, or
its rescission by the court for the failure of the other party
to perform, must be in no default himself. *Piper* v. *Stocker
et al.* 2 Grant's Cases, 116; *Boon* v. *Missouri Iron Co.* 17
How. 343; *Doyle* v. *Teas,* 4 Scam. 265; *Stone* v. *Sprague,*
20 Barb. 509; *Bellinger* v. *Kitts,* 6 id. 274; *Henry* v. *Raiman,*
25 Pa. St. 354; *Hungate* v. *Rankin,* 20 Ill. 642; *Bourland* v.
*Sickles,* 26 id. 498; *Clark* v. *Weis,* 87 id. 440; *Hough* v.
*Rawson,* 17 id. 588; *Smith* v. *Lamb,* 26 id. 396; *State*
v. *McCauley,* 15 Cal. 458.

The complainant should not have been allowed, by way of
amendment, to wholly change the object of his bill, by with-
drawing his offer to perform and ask for a rescission of the
contract. *Shields* v. *Barrow,* 17 How. 143; *Purvill* v. *McKin-
ley,* 9 Gratt. 1.

If a plaintiff makes a gratuitous offer by his bill, he can
not afterwards withdraw it. 1 Daniell's Chancery Practice,
387.

Messrs. COOK & UPTON, for the appellees:

A vendee is not entitled to a deed until he has made pay-
ment in full, unless the contract provides otherwise. *Terry*
v. *George,* 37 Miss. 539; *Doyle* v. *Teas,* 4 Scam. 203; *Headley*
v. *Shaw,* 39 Ill. 354; *Robb* v. *Montgomery,* 20 Johns. 15; Sug-
den on Vendors, 241, note e.

It is the duty of the vendor to prepare the deed, but he is entitled to a reasonable time to do so after demand, and is not in default until called upon for it a second time. *Fuller* v. *Williams*, 7 Cow. 57; *Fuller* v. *Hubbard*, 6 id. 1; *Connelly* v. *Pierce*, 7 Wend. 129; *Wells* v. *Smith*, 2 Edw. Ch. 78.

That an amendment of a bill for a specific performance to one asking a rescission of the contract, is proper, see *Jefferson* v. *Kennard*, 77 Ill. 246.

Mr. Justice Scholfield delivered the opinion of the Court:

This was a bill in chancery, by Albert E. Goodrich, against Peter Papin, David H. Keyes and Enos Slosson, to cancel a certain contract for the sale of what is known as the "Gardner House," in the city of Chicago, evidenced by the following instruments in writing:

"South Franklin Street, *Chicago, Sept. 27, '80.*

"A. E. Goodrich, Esq., City:

"*Dear Sir*—From the interviews and conferences I had with your agent, E. Slosson, Esq., and yourself, upon the negotiation for the purchase of the Gardner House property and appurtenances, of which you are the owner, I hereby make you the following proposition:    To purchase said property from you for the sum of two hundred and twenty thousand ($220,000) dollars, abstracts of title to be furnished by you, and payments to be made as follows:    Thirty-five thousand ($35,000) cash, on or before January 1, 1881, and to enter into possession of said property as soon as the said cash payment is made, with all appurtenances, furniture, utensils and fixtures as now exist in the house, of which an inventory to be made collectively, between our respective agents, as soon as you have accepted my proposition; said purchase subject to a first mortgage of ninety thousand ($90,000) dollars on the building and furniture of the hotel, and to be paid from the purchase money on the first of October, 1886, and bearing six per cent interest per annum; and

by taking possession of the premises on or before the first day of January, 1881, after the first cash payment of $35,000 is made.   I will give, or cause to be given, a second mortgage on said building and appurtenances for the balance, one hundred thousand ($100,000) dollars, of which the payment is to be made as follows, said mortgage to be released gradually, as the payments are made:   $10,000 on or before January 1, 1882; $10,000 on or before January 1, 1883; $10,000 on or before January 1, 1884; $10,000 on or before January 1, 1885; $10,000 on or before January 1, 1887; $10,000 on or before January 1, 1888; $10,000 on or before January 1, 1889; $10,000 on or before January 1, 1890; $10,000 on or before January 1, 1891; $10,000 on or before January 1, 1892.   Total, $100,000, the whole bearing six per cent interest (interest payable semi-annually) on all deferred payments until paid for.

Respectfully,

PETER PAPIN.

"(Interest payable semi-annually) ; payments to be applied as A. E. Goodrich or assignee may direct.

A. E. GOODRICH.

"Accepted as above.
PETER PAPIN."

By the terms of this contract the payment of the $35,000 must precede the execution of a deed by Goodrich and wife to Papin, and, necessarily, the execution of that deed must precede, or be concurrent with, the execution of the mortgage by Papin to Goodrich to secure the deferred payments, for until he had title conveyed to him he could have nothing to mortgage.

We are unable to say the courts below were unwarranted by the evidence in finding that, after Papin had assigned his interest in the contract to Keyes, and about the 20th of January, 1881, complainant was ready and willing, and offered, to comply with his part of the contract, but that

Keyes then refused to carry out the contract on the other side, alleging that it was then too late. This is shown in substance by the testimony of Cook and Philo, and we are unable to say that their testimony is overcome by other evidence on the part of the defendants. The real controversy, as we understand the arguments of counsel, is, whether prior to that time Papin or Keyes had been ready and willing to carry out the contract, and offered to do so, but Goodrich was unable or unwilling, and on his part refused to do so, and thus justified the subsequent refusal on their part.

It is shown by Douglass, an attorney for Papin, that on the Wednesday next preceding the last day of December, 1880, which was, probably, the 29th of the month, he called upon Goodrich to have him set a day for the meeting of the parties to carry out or execute the provisions of the contract, but that Goodrich refused to name a day, and was insulting and denunciatory in his language. Goodrich then expressed the belief that those professing to wish to carry out the contract had no money, and said that he knew Papin was a scoundrel. However disagreeable and irritating this language of Goodrich was, it afforded no excuse for any relaxation on the part of Papin, or those wishing to occupy his place in the contract, in preparing and offering to carry out the contract. There needed no day to be fixed for the meeting of the parties to carry out or execute the contract. The contract itself provided the $35,000 in cash must be paid on or before the first day of January, 1881, and possession was to be taken after that payment was made. Until that payment was made, Goodrich had nothing to do. It is true the contract provided for the taking of an inventory of the furniture, etc., in the house, but since this had nothing to do with fixing and making more definite the duties of either party to the contract,—such as determining prices or amounts of payments,—we must presume it was only intended as a means of identification,—separating or setting apart this particular

property,—and so would, necessarily, have to be a part of the process or operation of surrendering possession of the property. It was the duty of Papin, or those representing him, when ready to carry out the contract, on or before the first of January, 1881, to go to Goodrich and make the payment, or at least offer unqualifiedly to do so. If Goodrich meanwhile had put it out of his power to carry out the contract, this would doubtless be excused, but that is not pretended here.

The proof shows that on the 31st of December, 1880, Keyes procured $35,000, which was carried to the Gardner House, and Goodrich was then notified that the money was ready to be paid to him; that Goodrich proposed that the parties should go with him to the First National Bank, and the transaction could be closed up there and the papers passed. The parties all then went to the First National Bank. Goodrich seems to have been excited, and somewhat intemperate in speech, and he expressed doubts about the other party really having the money with which to make the payment of the $35,000. He claimed to have his deed ready, and they asked to see it, but he refused. They professed to be ready and willing, and the proof shows they had with them $35,000, to make that payment, if, on inspecting his deed, it should prove to be satisfactory. He requested that they would pay the money into the hands of the cashier of the First National Bank, to whom there seems to have been no personal objection, saying that he would then deliver the deed. This they refused to do.

Had Papin, or those representing him, the right to inspect the deed of Goodrich for the property before paying the $35,000? It has been seen the contract contains no provision to that effect, and that even the execution of a deed is not expressly provided for, but is simply inferred as a conclusion of law; but that inference is also that the money is first to be paid. Until after that is done possession is not to

be given, and no legal duty arises to execute a deed. Clearly there can be no right to inspect a deed before there is a legal duty on the opposite party to have it made, and ready to be delivered.

An offer was made to prove that there was a custom in Chicago to afford purchasers an opportunity to inspect the deed before requiring them to make payment. This was properly excluded by the court. There was no offer to prove that it was uniform, long established, generally acquiesced in, and so well known as to induce the belief that the parties contracted with reference to it. *Turner* v. *Dawson et al.* 50 Ill. 85 ; *Packard et al.* v. *Van Schoick,* 58 id. 81. Besides, it is impossible there could be a custom to allow a party to inspect a deed at a time when there is no legal duty to have such deed made and ready to be delivered.

It is not to be understood that, under the evidence, we hold that Goodrich made a sufficient tender of a deed, or manifested such a willingness to go on and comply with his contract at that time, as to have authorized him then to have filed a bill to cancel. In that event the burden would have been upon him, and it would have then been necessary for him to have shown ability, readiness, willingness, etc., to carry out the contract. But the defendants here seek to justify a refusal subsequently to comply with the contract, on the ground that what they here did exonerated them from all further obligations in that regard, and necessarily, therefore, the burden is upon them to show that what they claim is such exoneration, is so in fact. The principle that ability and readiness to perform, and notice thereof to the opposite party, excuses actual performance or a formal tender, can have no application, because it was neither shown that Goodrich was unable to perform, nor that he excused or waived the defendant's performance. In our opinion neither party, by what transpired on the 31st of December, 1880, was relieved from his obligations under the contract. There-

after the contract stood as if nothing had been done or said at that time.

Some objection is taken that the abstract was not properly furnished or presented by Goodrich. It is sufficient to say, in that respect, no objection of that kind was urged at the time. The abstract was in the hands of Wright & Tyrrell, and held by them because they held the loan on the property of $90,000, which Papin, by the terms of the contract, was bound to pay. Keyes was notified where the abstract was, and that it could be examined there at any time. No objection was made to this, but Goodrich was notified that he declined to carry the contract out because it was then too late.

The bill, as first filed, prayed for specific performance of the contract, but by a subsequent amendment, made by leave of the court, the prayer was changed to that of cancellation of the contract. This is now urged as error. No objection of this kind was interposed in the circuit court. On the contrary, the defendants there answered the bill as amended, and tried the case without bringing forward this objection. It is now too late to urge it, even if it were, if interposed in apt time, a valid objection. But we do not see why, treating it as a question properly before us, the amendment was not properly allowed. The defendants had no vested rights in the phraseology or form of the bill. *Jefferson* v. *Kennard,* 77 Ill. 246.

We perceive no cause to disturb the decree of the circuit court. The decree of the Appellate Court is affirmed.

*Decree affirmed.*