AUGUST LAMOTTE, Appellee, vs. A. W. STEIDINGER,
Appellant.

Opinion filed February 17, 1915.

1. EXECUTORS AND ADMINISTRATORS—*land cannot be purchased for estate as an investment.* An administrator cannot, nor can an executor unless so authorized by the will, use the funds of the estate to purchase land as an investment, for the benefit of the estate.

2. SAME—*when administrator or executor may purchase land.* An administrator or executor may in good faith and in the exercise of sound judgment acquire title to real estate for the purpose of conserving and protecting the estate, and land thus acquired is not the property of the executor or administrator but is to be subjected to the payment of debts and legacies and to distribution, like personal property, and for this purpose the executor or administrator may sell the land and convey good title by deed.

3. SAME—*when executors buy land to conserve estate they do not take as tenants in common.* Where executors buy land to conserve the estate and the deed is made to them by name, as executors of the estate, they do not take title as tenants in common but as joint tenants in their representative capacity, and on the death of one of them a conveyance by the survivor will divest the executors of all their interest in the land.

4. ABSTRACTS OF TITLE—*a merchantable title does not mean a perfect title.* An abstract, in order to show a merchantable title, is not required to show a perfect chain of title from the government, and it may show a merchantable title although there may be a possibility of a defect.

5. SPECIFIC PERFORMANCE—*character of defect which will justify refusal to perform.* To justify a refusal to perform a contract to convey land upon the ground that the abstract furnished fails to show a merchantable title in the vendor, the defect complained of must be sufficient to cast a cloud upon the title which would render it suspicious in the minds of reasonable men.

6. SAME—*when an apparent defect in the title is cured by affidavit.* Where an abstract of title shows a conveyance of the land to two named persons as executors of a certain estate and a subsequent conveyance by one of such persons as sole surviving executor of the said estate, the apparent defect in the title is cured by an affidavit showing that the land was purchased by the executors to conserve the estate, and that the executor who did not sign the subsequent deed had died before it was made.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

ROBERT HENNING, and O. F. MORGAN, for appellant.

A. F. GOODYEAR, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree for the specific performance of a contract to convey land. The bill was filed by appellee, setting up the written agreement relied upon, and alleged he was willing, able and offered to perform his part of the contract but that appellant refused to perform his part of it. Appellant answered the bill, denying appellee had complied with the contract by furnishing an abstract of title as agreed, and also alleging fraud and deceit on the part of appellee in procuring appellant to enter into the agreement. Appellant also filed a cross-bill, in which he set up the failure of appellee to furnish an abstract showing he had the kind of title required by the agreement; alleging that appellee procured the execution of said agreement by fraud, misrepresentation and deceit, setting out in detail wherein the fraud and deceit consisted, and alleging the agreement was unfair, unjust and unconscionable and that its performance should not be enforced. The cross-bill prayed that the payments made by appellant be required to be returned to him, that the parties be restored to their original positions and that the agreement be canceled. The cause was heard before the chancellor and a decree entered as prayed in the original bill, decreeing the specific performance of the contract and dismissing the cross-bill.

The land in controversy is in Iroquois county. Appellant is a farmer and resides in Livingston county. Prior to April, 1912, he had acquired title to an 80-acre tract of land in Iroquois county which was subject to a mortgage of $5000. Shortly after the appellant purchased that land

J. A. Moore, a real estate agent living at Fairbury, in Livingston county, proposed to appellant to purchase appellee's farm of 240 acres in Iroquois county. Appellee resided at Crescent City, in Iroquois county. About May 1 or 2, 1912, appellant and Moore went to Crescent City, where they saw appellee, and together the three of them went to Watseka, the county seat of Iroquois county. Appellee priced the 240-acre farm to appellant at $185 per acre. The three of them drove out and looked at the farm, and after returning to Crescent City appellee raised the price to $190 per acre. On the fourth of May appellant and Moore again went to Crescent City to see appellee, and the three of them went to Watseka to an attorney's office, where an agreement was written up and signed by both parties, in which appellee agreed to sell and convey to appellant the 240-acre farm, and appellant agreed to buy it, for the sum of $45,600. Twelve hundred dollars was paid in cash, $12,000 was to be paid by the conveyance by appellant to appellee of the 80-acre tract of land appellant owned in Iroquois county, $5000 was to be paid in cash or promissory notes on May 6, 1912, and appellant agreed to assume a mortgage on the farm for $14,000 and to pay in cash on March 1, 1913, $18,400. The $5000 cash payment or notes to be given May 6, 1912, was in consideration of appellee agreeing to assume a $5000 mortgage on the 80-acre farm he was to get from appellant. Each of the parties agreed to deliver to the other, upon demand, an abstract of title showing a merchantable title in the grantors, respectively, and in case any such abstract was found materially defective within fifteen days after it was furnished, the party furnishing it was to have a reasonable time to cure the defects. The agreement provided that if appellant failed to make the payments or perform any of the covenants agreed to be performed by him, the appellee might, at his option, forfeit and determine the contract and retain the payments made, in satisfaction and liquidation

of damages sustained. It was further agreed that if either of the parties failed to keep and perform the agreement on his part, the party failing should forfeit to the other $3000 as liquidated damages, but no forfeiture was to prevent either party from enforcing the performance of the agreement by appropriate proceedings. Appellant paid the $1200 and $5000 cash payments and conveyed his Iroquois county 80 acres of land to appellee. The abstract of title to appellee's farm was furnished appellant on January 21, 1913. Appellant submitted it to his attorney for examination, who on February 5, 1913, wrote a letter addressed to appellant, which he mailed to the attorney for appellee, pointing out certain objections to the title and gave his opinion that the abstract did not show a merchantable title. A lengthy correspondence ensued between counsel for the respective parties as to the alleged defects in the abstract of title. On March 1, 1913, that being the date fixed in the agreement for the conclusion of the deal and the payment by appellant to appellee of $18,400, the parties met at the First National Bank at Watseka, the place designated in the agreement. Appellant inquired if the defects in the title had been corrected in accordance with the opinion of his counsel and was informed that they had not been. Appellant thereupon handed appellee's attorney a communication addressed to appellee, stating appellant had come to the bank for the purpose of consummating the agreement but refused to accept the title in the condition it was shown to be in the abstract; that the abstract did not show a merchantable title, and the appellant demanded an abstract showing such title. The parties appear not to have met again or had any communication with each other with reference to consummating the agreement, and on the sixth day of June, 1913, appellee filed the bill in this case for specific performance.

The objection to the abstract is to the manner in which it shows the title to the land passed out of Nelson V. Maloney, the owner of it in 1874, and down to George C.

Danforth, in 1887., It is not claimed Maloney's title was not good. In July, 1874, he and his wife executed two mortgages, with powers of sale, to Danforth, Snow & Co., a co-partnership composed of A. G. Danforth, H. W. Snow and A. H. Danforth. One mortgage was to secure an indebtedness of $1400 and the other an indebtedness of $500. The land was sold under these mortgages by the mortgagees at public sale on October 7, 1879, to "Joshua Wagenseller and Asa H. Danforth, executors of Gideon H. Rupert, deceased, of Tazewell county, Illinois." The deeds recite that the purchasers paid $2736.85 for the land. In March, 1887, Asa H. Danforth, as sole surviving executor of the last will and testament of Gideon H. Rupert, deceased, late of Pekin, Illinois, sold the land to George C. Danforth for $3200. This deed recites that Gideon H. Rupert, deceased, late of Tazewell county, left a last will and testament, in which he appointed Asa H. Danforth and Joshua Wagenseller executors, with power to sell and dispose of his real estate. The deed sets out section 3 of the will, which directs his executors, as soon as practicable after the testator's death, to sell all his property, real and personal, either at public or private sale, and the executors were authorized to execute to the purchasers good and sufficient deeds for the premises sold. The deed further recited that Joshua Wagenseller was dead. The abstract set out a copy of an affidavit made by Almon G. Danforth and recorded in the recorder's office. In this affidavit Almon G. Danforth states he is the son of Asa H. Danforth, who, together with Joshua Wagenseller, was appointed, February 22, 1877, executor of the last will of Gideon H. Rupert; that Joshua Wagenseller died July 21, 1882, leaving Asa H. Danforth sole surviving executor; that affiant has examined the files of the Rupert estate, and that they showed the executors were charged with an unsecured note or claim against N. V. Maloney, amounting, principal and interest, to $6786.59; that the total of the items charged against

the executors in the inventory was $296,448.53, which inventory was approved by the county court. The affidavit further states that all the accounts of the executors were cleared through the banking house of Danforth, Snow & Co., in Washington, Tazewell county; that the taking of the mortgages from Maloney to said Danforth, Snow & Co. was done by said banking firm in an effort to secure a portion of the unsecured claim due the Rupert estate from Maloney, which was believed to be doubtful, if not worthless. The affiant further states that he is informed and believes the fact to be that the annual reports of the executors and the surviving executor on file show the transactions relative to the ownership of said lands, the meager rents received from them and the payment of drainage taxes and assessments thereon, and that all of said reports were approved by the county judge of Tazewell county. Affiant further states that it became necessary to close the estate of Gideon H. Rupert, and Asa H. Danforth, sole surviving executor, sold the land to George C. Danforth for $3200, which was at that time a fair market price.

Appellant contends that the executors of the Rupert estate had no authority to buy the land for the benefit of the estate; that the deed to them vested the title in them as individuals, as tenants in common, the words "executors of Gideon H. Rupert, deceased," being merely *descriptio personæ;* that when Wagenseller died his undivided one-half descended to his heirs-at-law, who have never conveyed their interest, and that no conveyance had ever been made by Asa H. Danforth in his individual capacity.

The power to buy real estate by the executors was not conferred by the will of Rupert but the power to sell was. An administrator cannot, nor can an executor without authority given by will, use the funds of the estate to buy land as an investment for the benefit of the estate. The statute charges executors and administrators with so much of the estate, personal and real, of the decedent as they,

after due and proper diligence, might or should acquire. They may in good faith and in the exercise of sound judgment acquire title to real estate for the purpose of conserving and protecting the estate. (*Whitney* v. *Peddicord,* 63 Ill. 249; *Short* v. *Johnson,* 25 id. 489; 18 Cyc. 351; 11 Am. & Eng. Ency. of Law, 840, note 2.) Land thus acquired is not the property of the administrator or executor, but is to be subjected to the payment of debts and legacies and to distribution, like personal property. For this purpose the administrator or executor may sell the land and convey good title by deed. (*Haberman* v. *Baker,* 128 N. Y. 253; 28 N. E. Rep. 370; *Lockman* v. *Reilly,* 95 N. Y. 64; *Little* v. *Lesia,* 5 Mich. 119; *Richardson* v. *McLemore,* 60 Miss. 315.) The affidavit referred to states fully the circumstances under which the land was bought by the executors in an effort to conserve the best interests of the estate and shows no abuse of discretion or power in this regard, and we think it must be held that the executors took the title in their representative capacity, in trust for the benefit of the estate, and not as individuals. (Devlin on Deeds,—3d ed.—738a, and note by Judge Freeman to *Central State Bank* v. *Spurlin,* 11 Iowa, 187, [82 Am. St. Rep. 513,] where a collection of the authorities will be found.) The conveyance to the executors did not create a tenancy in common but a joint tenancy, and upon the death of one of them the survivor succeeded to all the rights of the two and a conveyance by him divested the executors of all interest in the land. The only persons who could complain of these actions of the executor or executors were the heirs, legatees and creditors of the Rupert estate. No objection was ever raised by any of them, and the estate has been closed, as we understand the evidence, for more than twenty years. An abstract, in order to show a merchantable title, is not required to show a perfect chain from the government down. It may show a merchantable title in the claimant although there may be a possibility of a de-

fect, but a defect, to excuse the specific performance of a contract on the ground that the abstract does not show a merchantable title in the vendor, must be sufficient to cast a cloud on the title which would render it suspicious in the minds of reasonable men. The mere possibility of a defect which according to ordinary experience has no probable basis does not necessarily show an unmerchantable title. (*Geithman* v. *Eichler*, 265 Ill. 579, and cases there cited.) Certainly, apparent defects might appear which could not be explained by affidavit, but some defects may be so explained. In *Attebery* v. *Blair*, 244 Ill. 363, information explaining apparent defects in the abstract of title was supplied by affidavits and held sufficient. It was said in that case that where an abstract contains a complete summary of every matter of record affecting the title, with evidence of facts and circumstances explanatory of the records, which showed the title to be good, it was sufficient.

In our opinion the affidavit accompanying the abstract in this case was sufficient to explain the defects complained of and show that the title was not defective in that respect. No question is made as to the truth of the affidavit, and in our opinion it was sufficient.

We are of the opinion the trial court would not have been warranted in refusing to enforce the contract on the ground that it was procured by fraud and misrepresentation and was unjust, inequitable and unconscionable. Appellant claimed there were large portions of the farm of an alkali nature and unproductive; that this condition could not be detected by walking over the farm and looking at the soil; that to the eye the alkali spots looked like other land having a black or dark soil. He testified that both appellee and Moore represented to him that it was all good, productive soil, and that he relied upon these representations. The man who owned the farm before appellee acquired it, and who sold it to appellee, testified that there were some small spots on the land of an alkali nature, but

that in his judgment all these spots together would not exceed twenty acres. He testified the farm was productive. Appellant was on the farm and examined it before entering into the agreement to buy it. He visited the farm and went over it twice during the summer after agreeing to purchase it. In November, 1912, he leased it to a tenant for one year from March 1, 1913, with the privilege of occupying it three years longer, at the option of the lessee. The tenant went into possession February 8, 1913, and is in possession at this time. The weight of the proof shows appellant agreed to pay more for the farm than its fair cash value, but it does not sustain the claim that he was induced to do so through fraud, deceit and misrepresentation. Appellant claims he had no knowledge of the character of the farm before he entered into the agreement. He was never on the farm, so far as the proof shows, until he visited it with appellee with a view to buying it, but he did own land in Iroquois county,—one farm of 280 acres one-half mile south of appellee's land and two other tracts in other parts of the county. It is true, appellee represented to appellant that the farm was good soil and productive, and he introduced proof to sustain these representations. Certainly the proof falls far short of rendering the agreement voidable on the ground of fraud and deceit. It is also worthy of note that when appellant notified appellee he would not perform the agreement he based his refusal solely upon objections to the abstract. Appellee claims his first knowledge that appellant made any claim that he had been defrauded by misrepresentations was when he filed his answer to the bill in this case.

We find no error in the decree, and it is affirmed.

*Decree affirmed.*