(No. 15114.—Decree affirmed.)

MELISSA B. HUNGERFORD *et al.* Appellees, *vs.* ED BEHRENDS *et al.* Appellants.

*Opinion filed April 18, 1923—Rehearing denied June 6, 1923.*

1. SPECIFIC PERFORMANCE—*burden is upon defendants to prove alleged misrepresentations.* In a suit for specific performance the burden is upon the defendant purchasers to prove by clear and convincing evidence the alleged false representations relied upon by them as ground for rescinding the contract, and if they have resorted to proper means of verifying the representations, so that they, in fact, relied upon their own inquiries, or if the means of investigation were at hand and their attention was drawn thereto, the contract cannot be rescinded.

2. SAME—*when alleged false representations will be deemed waived.* In a suit for specific performance of a contract for a conveyance the defendants will be deemed to have waived alleged misrepresentations by the vendor, relied upon in their cross-bill as ground for rescinding the contract, where they made no attempt, within a reasonable time after discovering the misrepresentations, to rescind the contract and did not mention the misrepresentations when they finally gave notice of their intention to rescind.

3. SAME—*when failure to furnish complete abstract of title will not defeat specific performance.* Where a contract for a conveyance calls for the furnishing of a deed and abstract and the making of certain payments as successive acts are performed by the parties on a certain date there is no breach by one party if the precedent act has not been performed by the other, and where the vendees have not made or tendered the payment required on said date but have accepted the abstract for examination they cannot afterward rely upon the fact that the abstract was not brought down to date as ground for rescinding the contract or to defeat the vendor's suit for specific performance.

APPEAL from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

WIRICK & WIRICK, and JOHN E. ERWIN, for appellants.

A. H. BURKE, H. C. WARNER, and BARNES, MAGOON & BLACK, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill was filed in the circuit court of Lee county July 13, 1921, by appellees, Melissa B. Hungerford and Frank B. Hungerford, her husband, praying for the specific performance of a certain contract entered into between them and appellants, Ed Behrends and Hannah Behrends, his wife, for the purchase of a farm of 300 acres about four miles north of Rochelle, in Ogle county, belonging to appellees. Appellants filed their answer to the bill and the cause was referred to a master to take proof. About the time of the hearing before the master a cross-bill was filed; also certain amendments to the original bill and an answer to the cross-bill. After the pleadings were settled the master finished taking the evidence and made his findings of fact and law, which findings in the main supported the contentions of appellees, but on one question he found in favor of appellants and recommended that the bill be dismissed because of the failure of appellees to comply with the contract on that point. On a hearing before the chancellor a decree was entered in the circuit court for specific performance of the contract and ordering the dismissal of the cross-bill for want of equity. From that decree this appeal has been taken to this court.

The material facts involved in this hearing are substantially as follows: William H. Smith died in 1919 seized in fee simple of this farm. Melissa B. Hungerford is a daughter of Smith, and together with her husband had farmed the land for several years prior to making the con-

tract in question. At the settlement of Smith's estate the heirs agreed that this farm should be put up at public auction and sold, and in accordance with this agreement, on September 1, 1920, the farm was sold to Mrs. Hungerford, Behrends being present at the sale and offering several bids before the land was struck off to her. It appears from the record before us that Behrends is about fifty-seven years old, owns 200 acres of land in Reynolds township, Lee county, Illinois, has been a farmer practically all his life, and has lived on his farm twenty-seven years, within six miles of Rochelle and eleven miles of the Hungerford farm. The evidence shows that after the sale to Mrs. Hungerford she and her husband decided the farm was too large for them, they having but one child, a daughter, and they decided to sell it if they could find a purchaser. September 18, 1920, Hungerford sought out Behrends and asked him if he would be interested in purchasing the farm from Mrs. Hungerford at a price specified, and Behrends said he might be out Sunday to look at the farm. On the following Sunday, Behrends and his three grown sons, and a neighbor, Fred Schmidt, called at the Hungerford farm, and Hungerford accompanied the party in their automobile over it. Before they left that evening, Behrends, after a conversation with Mr. and Mrs. Hungerford, said he might be back to look at the farm the following day. On Monday, Behrends and his oldest son, John, did come to the farm, and it was agreed that they would meet that afternoon in the city of Rochelle and arrange with a lawyer to draw a contract for the purchase of the farm on the agreed terms. Behrends and Hungerford went to Rochelle and had one of the firm of Gardner & Gardner draw a contract, of which the material parts are as follows:

"That if the party of the second part shall first make the payments and perform the covenants hereinafter mentioned on their part to be made and performed, the said party of the first part hereby covenants and agrees to con-

vey and assure to the said party of the second part in fee simple, clear of all incumbrances whatever, by a good and sufficient warranty deed, the lots, pieces or parcels of ground situated in the county of Ogle and State of Illinois, known and described as follows, to-wit: [Describing the premises.] Warranty deed to be delivered to second party on March 1, 1921. Title to be shown by abstract showing a merchantable title in Melissa B. Hungerford. And the said party of the second part hereby covenants and agrees to pay to the said party of the first part at the office of Peoples Loan and Trust Company, Rochelle, Illinois, the sum of $82,000 in the manner following: Note for $5000 due March 1, 1921, without interest; $47,000 cash March 1, 1921. First party agrees to obtain loan for balance $30,000 for five years at 6½ per cent interest, with optional payments. Second party to pay all taxes, levies, etc., subsequent to 1920. Insurance to be transferred to second party without charge. And in case of failure of the said party of the second part to make either of the payments, or any part thereof, or perform any of the covenants on their part hereby made and entered into, this contract shall at the option of the party of the first part be forfeited and determined and the party of the second part shall forfeit all payments made by them on this contract, and such payments shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by them sustained, and they shall have the right to re-enter and take possession of the premises aforesaid. It is mutually agreed by and between the parties hereto that time of payment shall be of the essence of this contract, and that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties."

The evidence in the record is to the effect, substantially without contradiction, that within ten days after executing the contract Behrends came with his son Ed to the Hunger-

ford farm and the son started fall plowing on the farm, and plowed during the several weeks following, 135 acres. The elder Behrends was on the farm four or five times during this plowing, and one of his other sons also made a visit there and talked about the condition of the farm, as to the finding of Canada thistles and as to the poor soil because of alkali and mustard.

It appears from the testimony of Behrends that when he first visited the farm with his three sons and the neighbor on Sunday they found some Canada thistles and had a talk with Hungerford about thistles on the farm, and he was told by Hungerford that there were only two patches of Canada thistles on the place. Behrends also testified that during this same visit he asked Hungerford how much poor land there was on the farm, and Hungerford replied that there were not more than two acres, down near some old straw stacks on the lower ground; that he also asked whether there was any alkali land on the farm, and Hungerford said no,—that he had the land examined by a soil expert and was told by him that there was no alkali land on the place. Behrends admitted that during the two trips on Sunday and Monday he went over a part of the farm with Hungerford and that Hungerford did not try to hurry him or try to keep him from examining the land, but that the weather was hot and Hungerford seemed tired, and desirous, without urging it, that they should not examine the farm at any greater length. He admits that there were no obstacles in the way or objection to his going over the farm by Hungerford of such a nature that he could not have taken all the time he wanted to examine the farm, but he insists that he relied on Hungerford's statement that the farm was all right and had no alkali land on it, only two patches of Canada thistles and not much mustard. It appears from the evidence that Behrends knew that Canada thistles and mustard plants are a deterrent to the raising of good crops and an injury to farm land and was familiar

with the effects of alkali soil. It appears from the record that even after the son Ed, in plowing the land, found that there were not only the two patches of Canada thistles found during their first examination but six other patches, and also found that there was quite a large amount of alkali land, he did not say anything to Hungerford about misleading him as to the soil and the amount of thistles and alkali, and the record shows, as we read it, that no specific objection was made until about July 1, 1921, by Behrends or any of his sons as to these defects in the land, which condition they claim was contrary to the oral statement of Hungerford that the land was all good land except two acres.

It appears from the record that within a few weeks after this contract was signed, during the early part of January, the Hungerfords held a sale of their chattel property, which Behrends attended with his son John and bought quite a number of things, including horses and machinery. The record also shows that Behrends at a later time visited the Hungerfords to pay the board bill of his son Ed and purchased from them some hay that was stored in the barn on the farm; also that the son Ed boarded with the Hungerfords during all the time he was doing fall plowing on the farm. It also appears that Hungerford asked one of the partners of the firm of Gardner & Gardner, attorneys, to examine the title to the land and give an opinion thereon, and that on December 12, 1920, at Hungerford's request, Behrends went to Gardner's office with Hungerford and they asked Clarence E. Gardner how he found the title, who stated, in substance, that it was absolutely all right. During this visit Gardner told Behrends he could take the abstract to someone else and have it examined if he wished to do so, and Behrends replied that if Gardner said it was all right it satisfied him. The record shows without contradiction that Behrends never inquired for the abstract or had anyone call for it before March 1. The evidence also shows that about a week before March 1, 1921, Behrends

came to Hungerford and told him he was having trouble about borrowing the money to pay for the farm, and Hungerford suggested that he might get it from a company in Washington, Illinois, and agreed to go with him to visit that company, and three or four days before March 1 did go with Behrends to Washington to assist in securing the loan; that Behrends was offered the money but objected to the amount of commission asked for making the loan, saying that he could get the money at a better rate or upon equally as good terms at home, and during that visit told Hungerford that he would be ready to complete the deal on March 1, as provided for in the contract; that at the time of this trip to Washington, Hungerford agreed, at Behrends' request, to accept a mortgage of $40,000 as part security for the payment on the land instead of the $30,000 provided for in the original contract, and further agreed to accept Behrends' personal note for $4000 of the purchase price so that Behrends would only have to raise $38,000 in cash to complete the purchase. After this trip to Washington, Hungerford did not see Behrends again until the morning of March 1, when he called him into the bank at Rochelle and made him a tender of the deed signed by himself and wife conveying the farm to Behrends as provided in the contract, the deed conveying it free and clear of all incumbrances and properly describing it. At the time of the tender, the evidence shows, Behrends only had $18,000 in cash ready to complete the purchase instead of the $38,000 necessary under the contract as modified. It was after this deed was tendered to Behrends that he went to Gardner's office to obtain the abstract, which had been there for him since December 12, 1920. He did not get an opinion from his attorney with reference to the abstract until March 3, 1921, and in a letter of March 5, which was not received by appellees until March 7, Behrends notified Mrs. Hungerford that he rescinded the contract, stating as his reason for so doing that part of the abstract was a copy,

and further stating: "I beg to advise you that you have failed to comply with your contract requiring you to furnish said abstract, in this: that the greater part of the claim of title to the land mentioned is shown only by what purports to be copies of certain original abstracts of said land. I also beg to advise that I am advised by my attorneys who have made a careful examination of the abstracts and copies of abstract furnished by you that the title to said lands is not merchantable. Please take notice that I have elected to consider said contract at an end, and I hereby demand of you that you return to me the note made by me at the time of signing the above mentioned contract for the sum of $5000, due March 1, 1921." The evidence also shows that on or about March 7, 1921, John Behrends asked Hungerford to make him a lease for the Hungerford farm, and after two or three visits for the same purpose Hungerford replied that he could not do it. John Behrends finally suggested that Hungerford make a lease with a clause in it that whoever became the owner of the farm should take the rent, and Hungerford agreed to make a lease under those conditions, which lease was dated March 12, 1921. While the record does not so show clearly, we think this lease was made for the Smith heirs by Hungerford as agent to John Behrends, oldest son of Ed Behrends, for a term of one year from that date, with the understanding that after the dispute over the purchase of the farm was settled the rent money was to be paid to the party taking the farm.

The master in his report grouped the contentions of counsel for appellants under two heads: (1) The defense of alleged false representations; and (2) the defense of failure to furnish an abstract of title as required by the contract.

It was stated by the master that the record does not show that any false representations had been made by appellees that could be relied on by appellants under the law.

The original bill in the cause was filed July 13, 1921, and the answer thereto was filed on September 26, 1921, wherein appellants formally set up for the first time in writing the claim that they had been misled and deceived by false representations. The false representations claimed were that Hungerford in selling the land said there were only two small patches of Canada thistles on the farm, while it is alleged the proof showed at least six large patches; also that Hungerford said there was no alkali on the farm, while it is claimed the evidence showed there were several tracts, some of them containing more than 15 or 20 acres, that was alkali land and very poor for raising crops. There was also some claim of misrepresentation as to the amount of mustard and as to the land not containing quicksand, but apparently these two last points are not urged here by counsel for appellants. The evidence shows, without contradiction, that about ten days after the signing of the contract Behrends and his son who was working on the farm claimed that they found six large patches of land containing Canada thistles, and also found, shortly after the contract was signed, that there were large tracts of alkali land. The law is that the burden is on appellants to prove the alleged false representations by clear and convincing evidence. (*Carter v. Carter,* 283 Ill. 324.) It is clear, and is admitted by the testimony of appellants, that the conditions as to the alkali land and growth of Canada thistles were open and visible and could have been ascertained by a careful examination of the farm, and it is clear, also, from the evidence that appellants had ample opportunity for such investigation and that there was no attempt on the part of appellees to obstruct their investigation as to all the alleged defects. This court has held that a party seeking the rescission of a contract on the ground of misrepresentation must establish the same by clear and irrefragable evidence, and if it appears that he has resorted to the proper means of verification, so

as to show that he in fact relied upon his own inquiries, or if the means of investigation and verification were at hand and his attention drawn to them, relief will be denied. (*Crocker* v. *Manley,* 164 Ill. 282.) It has also been held that when a party claims that he has been misled by false representations, if after discovering the untruth of the representations he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives the benefit of any relief that he might have claimed because of the misrepresentations. *Lamotte* v. *Steidinger,* 266 Ill. 600.

From the record it necessarily follows that the claim as to being misled by the allegations with reference to the condition of the farm as to Canada thistles and alkali has been waived by appellants because not made at the earliest opportunity after forming their belief as to the untruth of the allegations, and also because when it was first stated by appellants that they were going to rescind the contract they made no claim as to rescinding on the ground of misrepresentations. Furthermore, there is ground for the argument of appellees that there were no misrepresentations in fact made to the appellants before the contract was signed; that the defects complained of were open and visible, and every opportunity was given to Behrends to investigate for himself as to the alleged defective condition of the land, and that without being interfered with in any way by appellees he failed to make such an investigation as would easily have shown these defects if they existed. It is also clear that the master was right in his finding that upon discovery of the alleged misrepresentations regarding the condition of the farm as to Canada thistles and alkali land, appellants failed to attempt, within a reasonable time after such discovery, to rescind the contract because of such misrepresentations and therefore cannot avail themselves of such defense. *Day* v. *Fort Scott Investment Co.* 153 Ill. 293, and cases already cited.

In this connection it may be noted that Hungerford, who it was claimed made the false representations, testified that he never heard of the claim of false representations until after July 2, 1921, and it is clear from the letter of Behrends to Mrs. Hungerford of March 5, 1921, that he made no such claim at the time. he gave notice that he considered the contract rescinded.

There is a large amount of evidence in the record to indicate that the fair cash market value of the farm, not only when the contract was executed but at the time of the trial in the circuit court, was as much or more than the price stated in the contract. Some eight witnesses, all of them well qualified, one of whom had farmed this farm for years as a tenant, all agreed that the land was worth the contract price, and there was no proof introduced by appellants of a contrary nature. Therefore it is manifest that the master was right in his report when he found that the fair cash market value of the farm on the day of the sale was equal to the figure fixed in the contract.

Counsel for appellees argue that the failure of appellees to furnish an abstract of title on or before March 1, 1921, did no harm, for under the contract no tender of a deed or abstract was necessary until a payment or tender of payment was made by appellants; that the contract calls for successive acts being performed by the parties thereto; that the first act was a payment or tender of payment by appellants on March 1, 1921. The evidence shows, and the master found, that appellants knew the terms and conditions of the sale by the Smith heirs on September 1, 1920, and knew that Mrs. Hungerford could not get a deed to the premises from the heirs until March 1, 1921. It is true appellants claim that the deed from the Smith heirs could have been obtained on September 1, 1920, but the provisions of the contract as to the giving of this deed by the Smith heirs recite that they should give it on or before March 1, 1921, and we do not think that the law would compel them

to give it before said last mentioned date. In the printed announcement for the public sale by the Smith heirs, at which sale Mrs. Hungerford bought the land, it was stated that the deed would be delivered on March 1, 1921, and, as already stated, Behrends bid for this land at this sale. While he claims he reached the sale too late to hear this public announcement by the auctioneer, it seems clear from the entire record that he knew of the provisions in the notice of sale regarding the time when the deed was to be delivered. This court has held that if a contract calls for successive acts, first by one party and then by the other, there is no breach by one if the precedent act has not been performed by the other. *Osgood* v. *Skinner,* 211 Ill. 229; *Hale* v. *Cravener,* 128 id. 408; see, also, *Papin* v. *Goodrich,* 103 Ill. 86; *Griffin* v. *Griffin,* 163 id. 216; *Lang* v. *Hedenberg,* 277 id. 368; *Vincent* v. *McElvain,* 304 id. 160.

The master found that appellants, in view of the record, could not raise the question of a defective abstract because a part of the abstract was a copy and not the original, but held that the abstract was defective because it had not been brought down from December 9, 1920, to March 1, 1921. This last objection was not raised by Behrends in his letter of March 5, when he attempted to rescind the contract, and it would appear that the objection as to the abstract being defective because not brought down to March 1, 1921, could not be raised on this hearing under the reasoning of this court in *Vincent* v. *McElvain, supra,* and other cases cited.

In view of the entire record in this case we think that in equity and good conscience the decree of the circuit court is right in requiring specific performance of the contract on the part of appellants, and the decree will be affirmed.

*Decree affirmed.*